The appellant was indicted and convicted for the first degree murder of Vanche Ellette by shooting her with a pistol. His punishment was fixed at life imprisonment. Although appellant was a juvenile at the time of the offense, he was duly transferred to the Lawrence County Circuit Court to be tried as an adult. Young v. State, 399 So.2d 262 (Ala. 1981).
The sufficiency of the State's evidence is not questioned on this appeal. Therefore, a lengthy recitation of facts is unnecessary. Briefly, the undisputed evidence reveals that the appellant broke into the deceased's home in Mount Hope between two and three a.m. on August 4, 1979, and shot her to death with a .38 caliber pistol after being *Page 1111 
told twice to "get out of here." The only excuse the appellant offered for his action was that he "heard some noises" and "was scared of the dark." Appellant testified, "I just shut my eyes, and I just started firing the gun."
 I
The appellant contends that the trial court committed reversible error by excluding Miss Ruth Martin, the deceased's sister and the State's first witness, from "The Rule" after it had been invoked, and allowing her to take the witness stand for a second time after listening to the testimony of two other State witnesses. We disagree.
Where the rule for the exclusion of witnesses from the courtroom is invoked, it is within the sound discretion of the trial court to allow any one of the witnesses to remain in the courtroom during the examination of the others and the exercise of this discretion is not reviewable on appeal. Huskey v.State, 129 Ala. 94, 29 So. 838 (1901); Barnes v. State, 88 Ala. 204,7 So. 38 (1890); Stone v. State, 55 Ala. App. 663,318 So.2d 359 (1975). And this principle is applicable in a prosecution for first degree murder. Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953); Roynica v. State, 54 Ala. App. 436,309 So.2d 475 (1974), cert. denied, 293 Ala. 772, 309 So.2d 485,cert. denied, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 85 (1975). The sequestration of witnesses in a criminal prosecution, while rarely withheld upon request, is nevertheless discretionary with the trial court, and even where a witness remains in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is not open to review. Beddow v.State, 39 Ala. App. 29, 96 So.2d 175 (1956), cert. denied,266 Ala. 694, 96 So.2d 178 (1957), cert. denied, 355 U.S. 930,78 S.Ct. 412, 2 L.Ed.2d 414 (1958).
The purpose of sequestration is to obviate as far as possible one witness's trying to make his testimony consistent with that of another. Carpenter v. State, 400 So.2d 417, 423
(Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981); Rowellv. State, 53 Ala. App. 286, 299 So.2d 332 (1974). As was stated in Beddow, supra, "the efficacy of sequestration — which can only occur during the trial — is probably overrated. The law has moved from oath-taking to cross examination in its search for the truth." 39 Ala. App., at 31, 96 So.2d, at 177. Appellant, in this case, does not argue that Miss Martin attempted to make her testimony consistent with other State witnesses when she was recalled to the stand; rather, it is argued that her testimony "was in direct contradiction to the other witnesses for the State." Moreover, appellant's cross examination of Miss Martin was thorough and sifting. In short, we find no error in the trial court's exercise of its discretion.
 II
The record reflects that after the jury venire had been sworn and asked certain preliminary questions by the trial court, defense counsel voiced an objection to appellant's being brought into the courtroom handcuffed to six other inmates. The exact number of minutes the appellant remained handcuffed in the presence of the prospective jurors cannot be ascertained from the record. Defense counsel did recognize that the handcuffs had been removed one or two minutes before his objection. The objection was overruled. The district attorney and defense counsel then conducted a lengthy voir dire examination of the prospective jurors in three panels; the jurors were later struck and the examination of witnesses began. There is no further indication in the record, after defense counsel's initial objection was made, that appellant again appeared in the courtroom handcuffed. Based on these facts we find no error in the trial court's ruling.
A similar question was presented in Moffett v. State,291 Ala. 382, 281 So.2d 630, 631-632 (1973), cert. denied,414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114 (1974), where our Supreme Court held: *Page 1112 
 "We are not persuaded that there is reversible error because the defendant was brought into the courtroom handcuffed to a deputy sheriff. The handcuffs were immediately removed from him after he was brought into the courtroom during the trial. Edwards v. State, 279 Ala. 371, 185 So.2d 393 (1966). A sheriff who is charged with the responsibility of safely keeping an accused has the right in his discretion to handcuff him when he is bringing him to and from the courtroom, when the handcuffs are removed immediately after he is taken into the courtroom. Smith v. State, 247 Ala. 354, 24 So.2d 546
(1946); Faire v. State, 58 Ala. 74 (1877). The record shows that defendant was in jail at the time of this trial."
And as was stated by this court in Taylor v. State,372 So.2d 387, 389 (Ala.Cr.App. 1979):
 "The possibility of some prejudice to defendant in what occurred as narrated by defendant's counsel is not to be ignored, but there is not a sufficient showing thereof to justify the conclusion that the trial court was in error in overruling defendant's motion for a mistrial. Appellant relies upon the sound general statement in Clark v. State, 280 Ala. 493, 496, 195 So.2d 786, 788 (1967):
 "`. . . All of the authorities we have studied are agreed that to bring a prisoner before the bar of justice in handcuffs or shackles, where there is no pretense of necessity, is inconsistent with our notion of a fair trial, for it creates in the minds of the jury a prejudice which will likely deter them from deciding the prisoner's fate impartially. . . .'
 "Not to be overlooked, however, is the distinction made in Clark between handcuffing a prisoner in taking him to and from the court and in keeping him in handcuffs while he is being tried, unless there is reasonable ground for belief that such restraint is necessary to prevent his escaping or his rescue.
 "`Furthermore, it is not ground for a mistrial that an accused felon appear in the presence of the jury in handcuffs when such appearance is only a part of going to and from the courtroom. This is not the same as keeping an accused in shackles and handcuffs while being tried. Rhodes v. State, 34 Ala. App. 481, 41 So.2d 623 (1949).'"
Furthermore, the record affirmatively shows through the testimony of four inmate witnesses, three of whom testified for appellant, and through appellant's own testimony, that appellant was in jail at the time of his trial. Moffett, supra. And it should be pointed out that the trial court comprehensively instructed the jury on appellant's presumption of innocence in its oral charge. See Racine v. State,51 Ala. App. 484, 286 So.2d 890, cert. denied, 291 Ala. 684,286 So.2d 896 (1973), where the trial court cured any error in this regard by proper to the jury.
 III
During the cross examination of appellant's aunt, Elizabeth L. Young, defense counsel elicited testimony that appellant had never been a discipline problem, that he had always done what he had been told when he was in her home. On redirect the witness repeated that appellant had never been a discipline problem around her, that he had always been "good." The district attorney then asked the following question: "Okay. Did you have any other trouble this last summer? I am talking about the Summer of '79, peeping in windows?" Appellant objected to the question, but before the trial court could rule, the witness answered, "Not to my knowledge." After discussion by counsel and a voir dire examination of the witness out of the presence of the jury, the trial court sustained appellant's objection to the question but overruled the motion for a mistrial. The trial court further gave a curative instruction to the jury that they were not to glean any inference from the question or answer, that it was not evidence in the case. We find no error. *Page 1113 
Here the action of the trial court in sustaining the defense counsel's objection and in thereby refusing to allow the prosecutor to elicit the sought after information was sufficient to prevent reversible error. Dickey v. State,390 So.2d 1177 (Ala.Cr.App.), cert. denied, 390 So.2d 1178 (Ala. 1980). And even if a prosecutor asks an improper question of a witness, if the trial court instructs the jury to disregard the question, any error which might have occurred otherwise can be cured. Perry v. State, 371 So.2d 969 (Ala.Cr.App.), cert.denied, 371 So.2d 971 (Ala. 1979). A motion for a mistrial implies a miscarriage of justice and should only be granted where it is clearly manifest that justice cannot be afforded. It specifies such fundamental error in a trial as to vitiate the result. Dickey, supra. The granting of a mistrial is an extreme measure and should not be granted where the prejudicial qualities of the comment can be eradicated by the action of the trial court. Dickey, supra. Such action would have been far too drastic in this case. Furthermore, a negative answer to an improper question does not constitute reversible error.Scroggins v. State, 341 So.2d 967 (Ala.Cr.App. 1976), cert.denied, 341 So.2d 972 (Ala. 1977).
For the reasons shown, the judgment of the Circuit Court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[EDITORS' NOTE: PAGES 1114-1123 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.]
 *Page 1