This is an appeal from the appellant's convictions of sexual abuse in the first degree and sodomy in the first degree.
In February 1985, a Tuscaloosa County grand jury indicted the appellant for sexual abuse in the first degree, in violation of § 13A-6-66, Code of Alabama (1975), and sodomy in the first degree, in violation of § 13A-6-63. In November 1985, appellant filed a motion for psychological examination, testing, and evaluation of the victim, and the State moved to dismiss this motion. The trial court held a hearing on appellant's motion on February 6, 1986, after which his motion was denied. On February 27, 1986, appellant was convicted in a jury trial of both offenses charged. Thereafter, he was sentenced to a term of 15 years' imprisonment on the sexual abuse charge, and a term of 5 years' imprisonment on the sodomy charge.
 I.
The appellant contends that the State failed to prove a prima facie case of sexual abuse in the first degree and sodomy in the first degree, and that the trial court therefore erred in denying his motion for judgment of acquittal. Appellant further contends that the trial court erred by allowing the State to re-open its case-in-chief and present additional evidence. We do not agree.
In the case sub judice, appellant was convicted of sexual abuse in the first degree, in violation of § 13A-6-66, Code ofAlabama (1975), and of sodomy in the first degree, in violation of § 13A-6-63(a)(3). In this Court's opinion, the testimony of the victim, A.W., established every element of both offenses except that of the appellant's age, and this element was proved by the testimony of Ms. T.R., the victim's great-grandmother. Ms. T.R. testified on behalf of the State that she knew the appellant and that he was over the age of 16. A.S. testified that she was 12 years old when the trial occurred in February 1986; thus, she was less than 12 years of age when the *Page 652 
incident giving rise to this prosecution took place in January 1985. A.S. testified that, on that day, the appellant made her undress and lie on her bed, and that he then took his "private part," put it on her "private part," and tried to stick it in her. The victim likewise testified that the appellant kissed her on her private part, and that she obeyed the appellant because she was afraid that he would whip her if she did not. The record indicated that the appellant regularly whipped the victim, occasionally leaving large bruises on her thighs.
 "The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala. 1980):
 " ' "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 " ' "[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 " ' " 'Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir. 1963, 321 F.2d 140; Riggs v. United States, 5 Cir. 1960, 280 F.2d 949. . . . The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.' " ' (Emphasis in original.)
 "391 So.2d at 137-38, quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979)."
Ex parte Robinette, 531 So.2d 697, 698-99 (Ala. 1988).
This Court has reviewed the record of this case, and believes that there was sufficient evidence from which the jury might have reasonably excluded every reasonable doubt. The appellant maintains that alleged discrepancies in the victim's testimony, of A.S., considered together with the contradictory testimony presented by witnesses for the defense, are sufficient to create a reasonable doubt as to his guilt. Such inconsistencies, however, raise questions of weight, not sufficiency, and present credibility issues for the jury.Heup v. State, 49 So.2d 528 (Ala.Cr.App. 1989); Currin v. State,535 So.2d 221 (Ala.Cr.App. 1988), cert. denied, 535 So.2d 225
(Ala. 1989). As the evidence presented by the State was sufficient to sustain the jury's verdict, appellant's argument as to this issue must fail.
The appellant likewise alleges that the trial court erred to reversal by permitting the State to reopen its case-in-chief. Section 15-14-4, Code of Alabama (1975), states as follows:
 "The court may, at its discretion, at any time before the conclusion of the argument, when it appears to be necessary to the due administration of justice, allow a party to supply an omission in the testimony on such terms and under *Page 653 
such limitations as the court may prescribe."
A trial court has broad discretion to reopen evidence at any time prior to the close of final argument. United States v.Willis, 759 F.2d 1486, 1502 (11th Cir. 1985), cert. denied,474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); Williams v.State, 364 So.2d 717 (Ala.Cr.App. 1978). Appellant has shown no abuse of the trial court's discretion in allowing the State to reopen its case-in-chief, and we have found none. Therefore, no error exists in this regard.
 II.
The appellant next argues that the trial court erred by allowing a witness to give an impermissible statement of opinion as to the ultimate issue at trial. The record indicates that Mary Haygood, the Department of Human Resources case-worker who handled A.S.'s case, was called as a witness for the defense. Counsel attempted to use statements received by Ms. Haygood in the course of her investigation which reflected disbelief of the victim's allegations, to impeach the victim's testimony. During cross-examination of Ms. Haygood, the following occurred:
"CONTINUED CROSS EXAMINATION
"BY MR. SULLIVAN:
 "Q. Now, Mary, Mr. Prince asked you if the mother of [A.S.] told you she did not believe what [A.] had said; is that correct?
"A. Yes.
 "Q. And he asked you if you had an opinion as to whether or not you believed [A.]?
"A. That's right.
"Q. Do you have an opinion?
"A. I do.
"Q. And what is that opinion?
 "MR. PRINCE: We renew our objections, all of them that we made in chambers.
"THE COURT: Overrule.
"Q. What is that opinion?
 "A. I believed [A.] when she told me of her sexual abuse."
(Record at 288-89.) (Emphasis supplied.)
On direct examination of this same witness, defense counsel elicited the following testimony, to which no objection was raised:
 "Q. Okay. And I'm not trying to be discourteous to you, Mrs. Haygood, but you have an opinion in this case, don't you?
"A. Yes, I do.
 "Q. And, in fact, you tried to get Mrs. Hallman to change her opinion, didn't you?
 "A. I asked her — When I initially went to her after [A.] was placed in her home, I asked her what she knew of why [A.] was asked to stay there and what she told me was different from —
"Q. Okay.
"A. I told her what had been alleged.
"Q. Okay.
 "A. I asked her — At first, she was shocked and that was the kind of disbelief she expressed. I asked her if she could — to see if she could not believe [A.].
 "Q. All right. And then you also made an entry in your notes, didn't you, about that Mrs. Hallman impressed you as a reasonable person —
"A. Yes.
 "Q. — that appears open to receiving new information and to having her opinion changed?
"A. Yes.
"Q. Were you trying to change her opinion?
"A. I believed what [A.] told me."
(Record at 250-51.) (Emphasis supplied.)
Clearly, the testimony offered by Ms. Haygood on cross-examination is nearly identical to testimony given by her without objection on direct examination. In each instance, Ms. Haygood stated that she believed the allegations of sexual abuse that the victim made to her. Because Ms. Haygood's testimony during cross-examination was merely cumulative to that offered by her on direct examination, error in its admission, if any, was harmless. Bogan v. State,529 So.2d 1029, 1030 (Ala.Cr.App. 1988); *Page 654 Harris v. State, 412 So.2d 1278 (Ala.Cr.App. 1982).
 III.
The appellant argues that the trial court erred in denying his motion for mistrial, where the prosecution attempted, prior to any impeachment of the victim's testimony, to question the victim's great-grandmother about specific details of the victim's complaint. The record indicates that the following occurred on direct examination of Ms. T.R.:
 "Q. Mrs. R., without going into anything that [A.] said, was the complaint that she made to you of a sexual nature?
"MR. PRINCE: Now, we object to this.
"A. Yes.
 "MR. PRINCE: Wait a minute. We ask that that answer be stricken and the jury not consider it.
 "MR. SULLIVAN: Now, Your Honor, we would cite McElroy's Alabama Evidence, section 178.01, and that question is permissible under that section and we will refer Your Honor to that section.
 "MR. PRINCE: Judge, all evidentiary rulings are discretionary with you and the state has circumvented your ruling.
"THE COURT: Let's get this — Y'all come up here.
 "(Whereupon, there was a bench conference outside the hearing of the jury as follows:
 "MR. COOGLER: Judge, it's the same section that I cited yesterday that you ruled that they could not go into it.
 "THE COURT: I said they could ask about the fact of the complaint. Let me see exactly what it says.
"MR. COOGLER: On re-direct.
 "THE COURT: All right. It says here you can ask about the time of the complaint, the person to whom it was made, and the circumstances under which it was made.
"MR. PRINCE: Circumstance under which —
"THE COURT: But not the nature.
"MR. PRINCE: She's asked the nature.
 "MR. COOGLER: And we move for a mistrial at this time, Judge, based on that.
 "THE COURT: Let me poll the jury first. [Emphasis added.]
 "MR. PRINCE: Judge, will you tell them not only to strike it from the record but tell the jury that — to disregard it?
"THE COURT: Okay.
 "(Whereupon, the trial resumed within the hearing of the jury as follows:)
 "THE COURT: Ladies and Gentlemen of the jury, the Court has ruled that the answer to the last question was not admissible evidence, so I will instruct you to disregard her answer that it was of a sexual nature. And I am going to ask the members of the jury if they would be able to disregard this last statement and render a fair and impartial verdict or if they would be so prejudiced by this remark that it would taint your verdict or incline you more to give a guilty verdict than not a guilty verdict, and I will start with Mr. Jackson.
 "(Whereupon, the jury was polled by the Court and each juror gave a negative response.)
"THE COURT: Okay."
In Desimer v. State, 535 So.2d 238 (Ala.Cr.App. 1988), this Court reiterated the well settled rule of law that there is a prima facie presumption against error where the trial court immediately charges the jury to disregard improper remarks or answers. In Desimer, the trial court denied the appellant's motion for mistrial based upon testimony concerning his bond and rearrest. In affirming the judgment of the trial court, we held the following:
 "There is a prima facie presumption against error where the trial court immediately charges the jury to disregard improper remarks or answers. Wadsworth v. State, 439 So.2d 790
(Ala.Cr.App. 1983), cert. denied, Wadsworth v. Alabama, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984).
 "In St. John v. State, 523 So.2d 521
(Ala.Cr.App. 1987), we held:
 " ' "A motion for a mistrial implies a miscarriage of justice and should only be *Page 655 
granted where it is apparent that justice cannot be afforded. Young v. State, 416 So.2d 1109
(Ala.Cr.App. 1982). A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted. Woods v. State, 367 So.2d 982
(Ala. 1978); Duncan v. City of Birmingham, 384 So.2d 1232 (Ala.Cr.App. 1980); Wadsworth v. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied, Wadsworth v. Alabama, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984).
 " ' "The granting of a mistrial is an extreme measure, and a mistrial should be denied where the prejudicial qualities of the comment can be eradicated by the action of the trial court. Young, supra, Dickey v. State, 390 So.2d 1177
(Ala. Cr. App), cert. denied, 390 So.2d 1178
(Ala. 1980)."
 " 'Dixon v. State, 476 So.2d 1236, 1240
(Ala.Cr.App. 1985).' Id. at 523-24."
Id. at 242. See also, Henry v. State, 555 So.2d 768
(Ala.Cr.App. 1989).
In the present case, the trial court made a diligent effort to eradicate any prejudicial impact that the above-referenced exchange may have had on the appellant's case. In addition to giving a thorough curative instruction to the jury, the court also polled the individual jurors to insure that the incident would not affect their ability to render a fair and impartial verdict. Only after each juror had indicated an ability to decide this case based on the evidence presented did the court permit the appellant's trial to continue.
The grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse. Baker v. State,477 So.2d 496, 503 (Ala.Cr.App. 1985), cert. denied, 475 U.S. 1029,106 S.Ct. 1231, 89 L.Ed.2d 340 (1986); Roundtree v. State,461 So.2d 31 (Ala.Cr.App. 1984). As the appellant has failed to show such an abuse of the court's discretion, his argument as to this issue must fail.
 IV.
The appellant alleges that the trial court erred in denying his motion to require the child victim to submit to independent psychological testing. Appellant contends that such testing would have disclosed bias on the part of the victim toward him, and would likewise have assisted him in impeaching Dr. Virginia Glicken, who testified as an expert for the prosecution. We disagree.
In Ham v. State, 540 So.2d 805 (Ala.Cr.App. 1988), this Court addressed facts similar in nature to these of the present case. In holding that a trial judge had no obligation or authority to require the mother of a minor eyewitness to a shooting to make the child available for interview by defense counsel, Judge Bowen, writing for this Court, stated the following:
 "We know of no authority and have been cited to none which would have authorized or required the trial judge to order the witness to talk to defense counsel. This is not a situation where a material witness was made unavailable through prosecutorial misconduct. See Self v. State, 420 So.2d 798 (Ala. 1982). 'Any defendant has the right to attempt to question any witness prior to trial [if] he so desires in the absence of intimidating influence. However, by the same token, any witness has an attending right to refuse to be so interviewed.' Hill v. State, 366 So.2d 296, 312
(Ala.Cr.App. 1978), affirmed, 366 So.2d 318
(Ala. 1979); Veith v. State, 48 Ala. App. 688, 696, 267 So.2d 480 (1972). Clearly, '[a] witness may refuse to be interviewed or dictate the circumstances under which he will submit to an interview.' United States v. Dryden, 423 F.2d 1175, 1177, n. 6 (5th Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290 (1970)."
Id. at 809.
If a trial judge is without authority to require a witness to submit to an interview with defense counsel, it necessarily follows that he has no authority to order a child victim-witness to submit to a psychological *Page 656 
examination, a much more invasive procedure.
Moreover, appellant's argument that a psychological evaluation of the victim is necessary in the case sub judice to show her bias toward him is without merit. Counsel is free here, just as in any proceeding, to prove bias by asking the witness if she has a feeling of bias against the appellant, or by asking her about particular statements, acts, experiences or relationships that would reveal such a bias. C. Gamble,McElroy's Alabama Evidence, § 149.01 (3d ed. 1977).
This Court has neither found nor been cited to any statute or other authority which would authorize a trial court to order the psychological examination of a child victim of sexual abuse. The provisions of § 15-25-3(c), Code of Alabama (1975) (1986 Supp.) states in pertinent part:
 "(c) Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse or sexual exploitation, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony. . . ." (Emphasis supplied.)
 V.
The appellant contends that the trial court erred in allowing a rebuttal witness for the State, Jackie Anita Weaver, to testify that the appellant had inappropriately punished children. Appellant maintains that this was evidence of his general bad reputation as respects a specific trait of character, and was inadmissible because he never placed his reputation in issue. However, as this issue is not preserved for this Court's review, we need not reach the merits of the appellant's claim.
As the State notes in its brief, the appellant initially objected to the testimony of Ms. Weaver on the ground that she lacked sufficient personal knowledge to give the testimony anticipated. The trial court resolved this objection, apparently to the satisfaction of counsel, by ruling that Ms. Weaver's testimony would be limited to matters that she observed. Thereafter, the following occurred without objection on direct examination of Ms. Weaver:
 "Q. Let me interrupt you there. I am not asking you specifics of occasion, I am asking you can you describe the relationship between [the appellant] and [the victim]?
 "A. He was hostile toward her, he disliked her. He was angry at her and he would cut her down no longer than we were there."
It is well settled under Alabama law that matters not objected to at trial cannot be raised or considered for the first time on appeal. Bell v. State, 466 So.2d 167
(Ala.Cr.App. 1985); Robinson v. State, 342 So.2d 1331
(Ala.Cr.App. 1977); Pugh v. State, 247 Ala. 535, 25 So.2d 417
(Ala. 1946); C. Gamble, McElroy's Alabama Evidence, § 426.01(1) (3d ed. 1977). As appellant failed to object to Ms. Weaver's testimony at trial, there is nothing for this Court to review.
For the foregoing reasons, the judgment of the trial court is correct, and it is due to be affirmed.
AFFIRMED.
All the Judges concur.